**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 22 B 13283 |
| MICHAEL W. SWAIN, | ) | |
| | ) | |
| Debtor. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| RYAN DENNIS and KRISTEN DENNIS, | ) | |
| | ) | Adv. No. 23 A 20 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL W. SWAIN, | ) | Judge David D. Cleary |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter comes before the court on the motion of Ryan Dennis and Kristen Dennis ("Plaintiffs") for summary judgment ("Motion for Summary Judgment") on their two-count complaint ("Complaint") against Michael W. Swain ("Defendant" or "Swain"), seeking to deny the dischargeability of debt. Defendant timely filed an answer ("Answer") to the Complaint.

With the Motion for Summary Judgment, Plaintiffs filed a memorandum of law ("Plaintiffs' Memorandum in Support"). The court entered a briefing schedule, and the parties timely filed their response ("Defendant's Memorandum") and reply ("Reply"), including statements of material undisputed facts and attached exhibits. Having reviewed the papers and pleadings, the court will deny the Motion for Summary Judgment.

## I.      JURISDICTION

The court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409(a).

## II.      BACKGROUND

### A.  Statements of undisputed facts under Local Bankruptcy Rule 7056-1[1]

Pursuant to Local Bankr. R. 7056-1, a party moving for summary judgment must file a statement of material facts to which it contends there is no genuine issue ("7056-1 Statement"). The 7056-1 Statement "must consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion."  Local Bankr. R. 7056-1(B).

The party opposing a motion for summary judgment is required by Local Bankr. R. 7056-2 to file a concise response to the movant's statement of material facts.  *See* Local Bankr. R. 7056-2(A)(2). The opposing party must also file "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon[.]" *Id.* at (2)(b).

If the opposing party files a statement of additional facts, then "the moving party may submit a concise reply in the form prescribed in Rule 7056-2 for response. All additional material facts set forth in the opposing party's statement filed under section A(2)(b) of Rule 7056-2 will

---

[1] The U.S. Bankruptcy Court for the Northern District of Illinois amended its Local Rules effective September 1, 2024.  The Local Rules cited in this Memorandum Opinion are from an earlier version of the Local Rules that was in effect when the Motion for Summary Judgment was filed.

be deemed admitted unless controverted by a statement of the … moving party filed in reply."
Local Bankr. R. 7056-1(C).

Plaintiffs filed their statement of undisputed material facts ("Plaintiffs' Facts") with the Motion for Summary Judgment.  Defendant filed his responses to Plaintiffs' Facts ("Defendant's Fact Responses") and also filed an additional statement of undisputed material facts ("Defendant's Facts").  Plaintiffs filed their responses to Defendant's Facts ("Plaintiffs' Fact Responses").

The court has reviewed all statements of uncontested material facts and responses as well as the attached exhibits.  All admitted and relevant facts are summarized below.

### B. Admitted and undisputed facts

1.      At all relevant times, Defendant was the President and 100% owner of S4 Construction, Inc. ("S4").  Defendant controlled the actions and conduct of S4.  Because the actions complained of in the complaint are intentional torts – fraud and conversion – the Defendant is personally liable for his conduct, notwithstanding that his conduct was also for the benefit of S4. (Answer, ¶ 4; Defendant's Fact Responses, ¶ 12.)

2.      On or about September 16, 2019, Plaintiffs and S4 entered into a Builders Agreement (the "Agreement"), for S4 to construct a single-family home for Plaintiffs at the property located at 984 Cherry Street, Winnetka, Illinois (the "House"). (Defendant's Fact Responses, ¶ 4; Complaint, Ex. 1.)

3.      Pursuant to the Agreement, the construction budget for the House (excluding acquisition costs of the land) was $944,850.00. (Defendant's Fact Responses, ¶ 5; Complaint, Ex. 1.)

4.      Pursuant to the Agreement, Plaintiffs were to pay S4 as follows: (1) $75,000.00 upon signing the Agreement; and (2) a monthly draw request based on the percentage of work completed. (Defendant's Fact Responses, ¶ 6; Complaint, Ex. 1.)

5.      The Agreement did not require Swain or S4 to create a separate escrow account. (Plaintiffs' Fact Responses, ¶ 9; Complaint, Ex. 1.)

6.      On September 26, 2019, Plaintiffs made their initial deposit to S4 in the amount of $75,000.00. (Defendant's Fact Responses, ¶ 7.)

7.      Swain did not tell Plaintiffs that these funds could possibly be used for other debts or projects unrelated to the House, because he presumed in that case, they would not have made the payment.  (Plaintiffs' Appendix Ex. 1, Deposition of Michael W. Swain ("Tr.") at 48.)

8.      During the course of the construction project, Defendant requested a total of seven (7) construction draws on the following dates and for the following amounts:

- September 8, 2020, S4 requested a construction draw in the amount of $100,000.00 (the "September 8, 2020 Sworn Statement").

- October 21, 2020, S4 requested a construction draw in the amount of $122,229.43 (the "October 21, 2020 Sworn Statement").

- December 8, 2020, S4 requested a construction draw in the amount of $105,900.00 (the "December 8, 2020 Sworn Statement").[2]

- January 11, 2021, S4 requested a construction draw in the amount of $76,403.00 (the "January 11, 2021 Sworn Statement").

- March 12, 2021, S4 requested a construction draw in the amount of $75,850.92 (the "March 12, 2021 Sworn Statement").

---

[2] Plaintiff's Appendix Ex. 2 ("Dennis Dec.") states that the December 8, 2020 Sworn Statement is attached.  It is not. Instead, a duplicate of the October 21, 2020 Sworn Statement is attached as Exhibit 4 to the Dennis Dec.

4

- April 21, 2021, S4 requested a construction draw in the amount of $55,230.00 (the "April 21, 2021 Sworn Statement").

- July 26, 2021, S4 requested a construction draw in the amount of $70,599.02 (the "July 26, 2021 Sworn Statement").

(Defendant's Fact Responses, ¶ 8.) (collectively, the "Sworn Statements").

9. The construction draws requested from Plaintiffs totaled $681,212.37, and Plaintiffs paid $681,212.37 to S4 pursuant to the Sworn Statements and the Agreement. (Answer, ¶¶ 13-14.)

10. Out of the $681,212.37 that Plaintiffs paid S4 for the House, only $440,028.93 was paid to contractors/subcontractors (including to Defendant and his company S4) that worked on the House per the Agreement. (Defendant's Fact Responses, ¶ 11.)

11. Swain and/or S4 used approximately $241,183.44 for expenses that were not related to the House. (Tr. at 121.)

12. The Sworn Statements list all of the subcontractors who were used to build the House. (Defendant's Fact Responses, ¶ 13.)

13. The Sworn Statements reflect the phase that each subcontractor on the Sworn Statements will be used for in building the House. (*Id.*, ¶ 14.)

14. Defendant used some of the same subcontractors listed in the Sworn Statements for other construction projects unrelated to the House. (*Id.*, ¶ 15.)

15. A "draw request" is common construction terminology that means a contractor is making a request for money. (*Id.*, ¶ 17.)

16. Defendant paid the Village of Winnetka $21,728 for a building permit on September 10, 2020. (*Id.*, ¶ 22.)

17.     Plaintiffs paid Defendant for the Village of Winnetka building permit almost a full year earlier, on September 26, 2019.  (*Id.*, ¶ 23.)

18.     The bank statement for S4 for May 2020 reflects a beginning balance of $205.39 and an ending balance of -$166.51.  (Plaintiff's Appendix Ex. 3.)

19.     LRM Plumbing never worked on the House.  (Defendant's Fact Responses, ¶ 32.)

20.     LRM Plumbing is a recurring line item on the October 21, 2020 Sworn Statement and all the subsequent Sworn Statements.  (*Id.*, ¶ 33; Dennis Dec., Ex. 3.)

21.     Plaintiffs paid $122,229.43 as listed in the October 21, 2020 Sworn Statement.  (Tr. at 80-81.)

22.     Swain's October 2020 bank statements reflect a minimal, negative, or zero ending balance.  (Defendant's Fact Responses, ¶ 35.)

23.     Plaintiffs paid $105,900 as listed in the December 8, 2020 Sworn Statement.  (Tr. at 90.)

24.     Swain's December 2020 bank statements reflect a minimal, negative, or zero ending balance.  (Defendant's Fact Responses, ¶ 42.)

25.     Plaintiffs paid $76,403 as listed in the January 11, 2021 Sworn Statement.  (Tr. at 96.)

26.     Swain's January 2021 bank statements reflect a minimal, negative, or zero ending balance.  (Defendant's Fact Responses, ¶ 49.)

27.     Plaintiffs paid $75,850.92 as listed in the March 12, 2021 Sworn Statement.  (Tr. at 98.)

28.     Swain's March 2021 bank statements reflect a minimal, negative, or zero ending balance. (Defendant's Fact Responses, ¶ 56.)

29.     Plaintiffs paid $55,230 as listed in the April 21, 2021 Sworn Statement.  (Tr. at 102.)

30.     Swain's April 2021 and August 2021 bank statements reflect a minimal, negative, or zero ending balance.  (Defendant's Fact Responses, ¶¶ 63 and 70.)

31.    In August 2021, Swain texted Ryan Dennis and asked to meet him at the House.  (Tr. at 116.)

32.    At that meeting, he told Plaintiffs that S4 "was in bad shape and I would finish the house for them, but they were going to need to pay subcontractors moving forward to get it done in a timely fashion."  (Tr. at 117:2-6.)

33.    On August 5, 2022, Plaintiffs filed a state-court action against S4 and Swain, alleging breach of contract, fraud, and conversion. Subsequent to August 5, 2022, S4 and Swain hired an attorney to represent them; this attorney accepted service on their behalf. Despite hiring an attorney, S4 and Swain never answered or appeared in the state-court action. On October 17, 2022, Plaintiffs filed a motion for default judgment. Before the state court could rule, Swain filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. (Defendant's Fact Responses, ¶ 3.)

### III.    LEGAL ANALYSIS

#### A. Standard for a motion for summary judgment

The standard for a summary judgment motion is set forth in Fed. R. Civ. P. 56, made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7056. In ruling on the motion, the court must draw all reasonable inferences from the underlying facts in the responding party's favor. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Parkins v. Civ. Constructors of Illinois, Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).

Summary judgment is appropriate under Rule 56 if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party opposing summary judgment "must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita*, 475 U.S. at 587

(quotation omitted).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If the moving party establishes that there is no genuine dispute as to any material fact, "the non-moving party must then go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial."  *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013).

Plaintiffs seek a finding that their claim against Defendant is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6).  Exceptions to discharge are construed strictly against creditors and liberally in favor of debtors.  *See Matter of Scarlata*, 979 F.2d 521, 524 (7th Cir. 1992).

## B.  Count I: 11 U.S.C. § 523(a)(2)(A)

"When determining whether there is a genuine issue of material fact, the substantive law will identify which facts are material."  *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (quotation omitted).  The court will begin, therefore, with a review of the applicable substantive law.  11 U.S.C. § 523(a)(2)(A) states:

> (a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-- …
>
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>>
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

In order to grant summary judgment to Plaintiffs on the grounds that Defendant made false representations, the court must look at the admissible evidence as a whole and find that no

material question of fact exists regarding whether "(1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied." *Ojeda v. Goldberg*, 599 F.3d 712, 717 (7th Cir. 2010) (citations omitted).

1. **There is no genuine issue of fact that Defendant made a false representation or omission**

In each Sworn Statement, Defendant stated:

> That, for the purposes of … [the Agreement], the following persons have been contracted with, and have furnished or are furnishing and preparing material for, and have done or are doing labor on said improvement [the House].  That there is due and to become due them, respectively, the amounts set opposite their names for materials or labor as stated.  That this statement is a full, true and complete statement of all such persons, the amounts paid, and the amounts due or to become due to each.

There is no dispute that at least one subcontractor listed on the Sworn Statements never worked on the House at all.  LRM Plumbing is a recurring line item on the Sworn Statements. Defendant admitted that LRM Plumbing never provided services at the House.

The gist of the dispute between the parties, however, is whether Defendant made false representations in the Sworn Statements regarding subcontractors who did work on the House, but who had not been paid at the time Defendant signed the Sworn Statements.  Each Sworn Statement contains a list of vendors or subcontractors in a table with the following headings:

| Name | Phase | Contract Amt. | Extras & Credits | Adjusted Total | Prev. Paid | This Pmt. | Amount Due |
| --- | --- | --- | --- | --- | --- | --- | --- |

Plaintiffs contend that Defendant falsely represented on each of the Sworn Statements that certain subcontractors or vendors had been previously paid (according to the "Prev. Paid" and "Amount Due" columns).  They argue that Defendant "made obvious false representations of fact by falsifying the Sworn Statements to reflect payments to subcontractors that he knowingly did not pay[.]"  (Plaintiffs' Memorandum in Support, p. 7.)

9

In opposition to Plaintiffs' contentions, Defendant asserts that his "uncontradicted testimony is, and will be, that the meaning of that section is that it sets out the identity and cost of each subcontractor and supplier, and the amount due or to become due to each; and 'the amounts paid' by the customer – Plaintiffs – toward the amounts due." (Defendant's Memorandum, p. 2.)

In their Reply, Plaintiffs assert that the Mechanics Lien Act ("Act") directly contradicts Swain's proffered explanation. The Act provides that:

> It shall be the duty of the contractor to give the owner, and the duty of the owner to require of the contractor, before the owner or his agent, architect, or superintendent shall pay or cause to be paid to the contractor or to his order any moneys or other consideration due or to become due to the contractor, or make or cause to be made to the contractor any advancement of any moneys or any other consideration, a statement in writing, under oath or verified by affidavit, of the names and addresses of all parties furnishing labor, services, material, fixtures, apparatus or machinery, forms or form work and of the amounts due or to become due to each. Merchants and dealers in materials only shall not be required to make statements required in this Section.

770 ILCS 60/5(a).[3] Plaintiffs argue that Defendant's contention – that he did not intend the "This Pmt." or "Amount Due" columns to indicate the amount that was paid or remained due to any subcontractor – is directly contradicted by the Act. "Swain's argument … flies in the face of the Act's intended purpose of protecting subcontractor's claims." (Reply, p. 3.)

The court agrees with Plaintiffs' argument, which is supported by the case law. For example, in *Doors Acquisition, LLC v. Rockford Structures Const. Co.*, 2013 IL App (2d) 120052, ¶¶ 6-8, 39 N.E.3d 8 (Ill. App. Ct. 2013), the contractor provided a sworn statement to the owner, specifying that a subcontractor had been paid $130,398.34 and that no further balance remained due. In fact, the subcontractor had failed to make wage and benefit payments under its collective bargaining agreement. The trial court ordered the owner to pay the union.

---

[3] The Illinois legislature amended this section of the Act effective January 1, 2025. The changes are not substantive.

10

On appeal, the Appellate Court of Illinois reversed.  Although the question was whether the union was entitled to a lien on the property, the appellate panel's reasoning informs this court's reading of the Mechanics Lien Act:

> The Act seeks to balance the rights of owners, contractors, and subcontractors…. Consistent with that purpose, the balance should be struck in favor of the owner when the owner properly relies on a section 5 sworn statement from a general contractor that a subcontractor has been paid[.]

*Id.*, 2013 IL App (2d) 120052, ¶ 18 (citation omitted).  *See also Weather-Tite, Inc. v. Univ. of St. Francis*, 233 Ill. 2d 385, 392, 909 N.E.2d 830, 835 (Ill. 2009) ("The legislature obviously intended the contractor's sworn statement to notify owners of subcontractor claims."); *Knickerbocker Ice Co. v. Halsey Bros. Co.*, 262 Ill. 241, 245, 104 N.E. 665, 666 (Ill. 1914) ("In order to be apprised of the exact situation at the time any payment is demanded by and made to the contractor … the owner is entitled, under said section 5, to require, and it is the duty of the contractor to make, a statement showing the situation as it then exists…. [T]he owner has the right to rely and act upon the sworn statements made to him under said section 5 by the contractor, unless he knows, from any source, that the same are false."); *Gerdau Ameristeel US, Inc. v. Broeren Russo Const., Inc.*, 2013 IL App (4th) 120547, ¶ 61, 992 N.E.2d 27, 38 ("An owner has the right to rely on a contractor's statements pertaining to subcontractors and the work those subcontractors perform.").

When an owner is notified of amounts due or to become due to a subcontractor or vendor, the owner is required to retain funds sufficient to pay those subcontractors' claims.  The purpose of a sworn statement under section 5 of the Mechanics Lien Act is to provide that notice to the owner, which is why "the owner has a duty to require the sworn statement '*before*' paying the contractor any moneys." *Weather-Tite*, 233 Ill. 2d at 390, 909 N.E.2d at 834.  If the sworn statement does not accurately reflect the amounts paid or due to a subcontractor, the owner is

11

unable to act in accordance with the statute. The owner may end up paying twice, and the subcontractors are left unprotected, all of which defeats the purpose of the sworn statements from the contractor. *See id.*, 233 Ill. 2d at 393, 909 N.E.2d at 835.

For all of the reasons stated above, the court finds that, to the extent an amount was listed as "Prev. Paid" for a subcontractor or vendor, and that person had not actually been paid by Swain or S4, then Swain made a false representation. To the extent a subcontractor or vendor was listed with no "Amount Due" while in fact there was an outstanding invoice, or listed with an "Amount Due" that was incorrect at the time the Sworn Statement was signed, then Swain made a false representation.

**2. There is a genuine issue of fact as to whether Defendant made the false representations with reckless disregard for the truth**

In the Swain Declaration ("Swain Dec.") submitted as an exhibit with his response to the Motion for Summary Judgment, Defendant stated that his intent in the Sworn Statements was to provide Plaintiffs with a list of the vendors working on the House, the amounts *Plaintiffs* had paid, and the amounts that would come due for each of those suppliers or subcontractors. "At no time did I intend the "This Pmt." or "Amount Due" columns to indicate the amount that was paid, or had been paid, to any subcontractor or supplier." (Swain Dec., ¶ 8.) He stated further that "[t]his interpretation was based on my experience in providing similar sworn statements to other customers of my construction business, and it is the practice followed by other contractors, including my current employer." (*Id.*, ¶ 11.)

Plaintiffs argue that to give any credence to Defendant's statement is to treat Defendant as an expert. The court disagrees. Defendant is not providing an opinion about the interpretation of the Mechanics Lien Act throughout the construction industry in Illinois. The question is whether there is a genuine issue of fact that *Defendant knew* the Sworn Statements were false or

12

acted with a reckless disregard for the truth.  In his declaration, under penalty of perjury, Defendant made a statement about his knowledge, based on his personal experience.

Taking this issue to trial will provide the court with the opportunity to judge the Defendant's credibility on the witness stand as well as any other evidence he presents in support of his position that he did not act with a reckless disregard for the truth.  Therefore, there is a genuine issue of fact as to whether Defendant made the false representations in the Sworn Statements knowing they were false or with reckless disregard for the truth.

3. **There is a genuine issue of fact as to whether the false representations were made with the intent to deceive**

A defendant in a dischargeability action rarely provides direct evidence of an intent to deceive his creditors.  Therefore, courts may look to the surrounding circumstances of a case in order to determine whether such intent exists.  *See Deady v. Hanson* (*In re Hanson*), 432 B.R. 758, 773 (Bankr. N.D. Ill. 2010) ("Because direct proof of fraudulent intent is often unavailable, fraudulent intent may be inferred from the surrounding circumstances.") (citations omitted). "Where a person knowingly or recklessly makes false representations which the person knows or should know will induce another to act, the finder of fact may logically infer an intent to deceive."  *Bletnitsky v. Jairath* (*In re Jairath*), 259 B.R. 308, 315 (Bankr. N.D. Ill. 2001).

In his declaration, Defendant stated that he intended to provide Plaintiffs "a running total of how much they had paid and how much was their balance due."  (Swain Dec., ¶ 10.)  As an example, the September 8, 2020 Sworn Statement shows a total "Prev. Paid" amount of $75,000 and a total "This Pmt" amount of $100,000.  These are exactly the amounts previously paid by Plaintiffs as well as the current draw request by Defendant.  That supports Defendant's statement that his *intent* was to provide a running total of payments made and requested rather than to deceive Plaintiffs.

The question of Defendant's intent comes before the court on summary judgment. Therefore, Plaintiffs must establish that there is *no genuine issue of fact* that Defendant acted with the intent to deceive them.  At this stage of the proceedings, it is not unreasonable to infer that Defendant was only negligent or even oblivious regarding the correct use of the Sworn Statements.  "[S]ummary judgment is not appropriate if the court must make a choice of inferences." *Harley-Davidson Motor Co, Inc. v. PowerSports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003) (quotation omitted).  At trial, however, Plaintiffs' burden will be lower; they will need to prove only by a preponderance of the evidence that Defendant intended to deceive them.

Plaintiffs argue in their Reply that Defendant's representations about his intent are contradicted by the plain language of the Sworn Statements, which were an "unambiguous representation by Swain … that Plaintiffs' money would be used for the House[.]"  (Reply, p. 6.) In support of this argument, they highlight the following language in the Sworn Statements:

> That there is due and to become due them [the subcontractors], respectively, the amounts set opposite their names for materials or labor as stated.  That this statement is a full, true and complete statement of all such persons, the amounts paid, and the amounts due or to become due to each.

Plaintiffs do not explain how this statement supports their contention that each payment would be used solely and exclusively for the House.  In fact, this language says nothing about earmarking or segregating Plaintiffs' payments.

It is rare that a defendant's intent to deceive is found on summary judgment.  *See Cedillo v. Int'l Ass'n of Bridge & Structural Iron Workers, Loc. Union No. 1*, 603 F.2d 7, 11 (7th Cir. 1979) ("as a general principle, questions of motive and intent are particularly inappropriate for summary adjudication").  The question of a defendant's intent is best resolved at a trial where the court is able to evaluate the witness's credibility based on his demeanor and other intangibles not apparent from the paper filings.  *See In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998) ("credibility

14

issues are to be left to the trier of fact to resolve on the basis of oral testimony *except* in extreme

cases"). *See also Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985) ("only the trial

judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the

listener's understanding of and belief in what is said").

For all of these reasons, there is a genuine issue of fact as to whether Defendant's false

representations were made with the intent to deceive Plaintiffs.

4. **There is no genuine issue of fact that Plaintiffs justifiably relied on the Sworn Statements**

The final element of § 523(a)(2)(A) requires Plaintiffs to establish that they justifiably

relied on Defendant's false representations.  Justifiable reliance requires only that the creditor did

not "blindly rel[y] upon a misrepresentation the falsity of which would be patent to him if he had

utilized his opportunity to make a cursory examination or investigation." *Field v. Mans*, 516

U.S. 59, 71 (1995) (quotation omitted).  In other words, a plaintiff may not hide his head in the

sand if the falsity of a representation is readily apparent.  *See Zirkel v. Tomlinson* (*In re

Tomlinson*), No. 96 A 1539, 1999 WL 294879, at *12 (Bankr. N.D. Ill. May 10, 1999).  But

otherwise, he has no duty to investigate.  *See Field*, 516 U.S. at 70-72.

Justifiable reliance is a subjective standard.  It is determined by reviewing "the

circumstances of a particular case and the characteristics of a particular plaintiff." *Ojeda*, 599

F.3d at 717.  In general, however, property owners may rely on the sworn statements furnished

by their contractors.  *See, e.g., Knickerbocker*, 262 Ill. at 245, 104 N.E. at 666 ("the owner has

the right to rely and act upon the sworn statements made to him under said section 5 by the

contractor, unless he knows, from any source, that the same are false").  There is no evidence to

suggest that under the circumstances of this case and based on the characteristics of these

plaintiffs, there should be a different result.  *Compare Manny v. Udelhoven* (*In re Udelhoven*),

15

624 B.R. 629, 649–50 (Bankr. N.D. Ill. 2021) ("the evidence suggests that [Plaintiffs] were *not* justified in relying on [Defendant's] statements. [One of the Plaintiffs] works in commercial real estate and has done so for the past 10 years. He is an asset manager for a commercial real estate firm and reviewed around a hundred construction contracts in that capacity.").

In this case, there is no genuine dispute that Plaintiffs relied on the representations in Defendant's Sworn Statements.

**5. There is a genuine issue of fact as to whether Defendant committed actual fraud**

Plaintiffs also contend that Defendant's debt is not dischargeable under § 523(a)(2)(A) because he committed fraud. They assert that Defendant defrauded them by making express misrepresentations in the Sworn Statements. Whether the basis of any fraud would be a misrepresentation or not, Plaintiffs would still be required to establish that Defendant intended to defraud them. As discussed above in greater detail, there is a genuine issue of fact regarding Defendant's intent. Whether Defendant intended to deceive Plaintiffs or to defraud them, or whether he was just "disorganized and incompetent," *Korrub v. Cohn* (*In re Cohn*), 561 B.R. 476, 488 (Bankr. N.D. Ill. 2016), is an issue that the court will take up at the trial on this matter.

**C. Count II – 11 U.S.C. § 523(a)(6) – willful and malicious injury**

As stated above, the court must set forth the substantive law in order to identify which facts are material. *See Viamedia*, 951 F.3d at 467. 11 U.S.C. § 523(a)(6) states:

> (a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-- …

> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

In order to grant summary judgment to Plaintiffs on the grounds that Defendant incurred this debt through willful and malicious injury, the court must look at the admissible evidence as a whole. The court must find that no material question of fact exists regarding whether Defendant

16

acted with the actual intent to cause injury to Plaintiffs. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). As the Seventh Circuit wrote, the court must find no material issue of fact that the "willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." *Jendusa–Nicolai v. Larsen*, 677 F.3d 320, 324 (7th Cir. 2012). Conduct is malicious if a defendant acted "in conscious disregard of one's duties or without just cause or excuse[.]" *Matter of Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (quotation omitted).

In support of their contention that tendering a false contractor's affidavit is willful and malicious injury, Plaintiffs cite *Nicholas & Assocs., Inc. v. Morgan* (*In re Morgan*), Adv. No. 10 A 00253, 2011 WL 3651327 (Bankr. N.D. Ill. Aug. 18, 2011) and *In re Lampi*, 152 B.R. 543 (C.D. Ill. 1993). They argue that "[i]t is obvious that Swain knew that his conduct would cause financial injury to Plaintiffs. Simply put, Swain knew that Plaintiffs would lose their money if he did not use it on the House." (Plaintiffs' Memorandum in Support, p. 12.)

Plaintiffs do not cite to any of their undisputed material facts in support of the conclusion that Swain acted with the actual intent to cause injury to Plaintiffs, or that he knew injury to the Plaintiffs was highly likely to result from his actions. Indeed, there is no evidence before the court, let alone an undisputed material fact, that supports Plaintiffs' conclusory argument. Did Swain suspect that Plaintiffs would not pay him if he told them those payments might not be used on the House? He admitted as much in his deposition. But that suspicion does not inexorably lead to the conclusion that Swain knew Plaintiffs would lose their money.

The cases Plaintiffs cite do not support their position either. In *Morgan*, the bankruptcy judge held an evidentiary hearing. Therefore, the standard for finding that the debt was

17

nondischargeable under § 523(a)(6) was whether the *Morgan* plaintiff had proven the statutory requirements by a preponderance of the evidence, a lower burden than here, where Plaintiffs must establish that no question of material fact exists.  Moreover, the defendant in *Morgan* offered "no cause or excuse—just or otherwise" for his actions.  *Morgan*, 2011 WL 3651327, at *9.  In the instant case, however, Defendant stated in his declaration that any funds he received from Plaintiffs were deposited into his general operating account, from which he paid subcontractors, suppliers and other operating expenses.  These actions were based on his experience.

Neither does *Lampi* support Plaintiffs' position.  In that case, the defendants issued a check to a vendor, knowing that there were not sufficient funds in their account to cover the check.  "Defendants did not merely tender an insufficient fund check; rather they engaged in a deliberate act which deprived [plaintiff] of its lien and priority position in receiving satisfaction of its debt."  *Lampi*, 152 B.R. at 546.  Those facts are distinguishable from the facts of this case.  Moreover, the trial judge in *Lampi* had made findings of fact, and the reviewing district court determined only that those findings of fact were not clearly erroneous.

As the Seventh Circuit wrote, "[w]hether an actor behaved wilfully and maliciously is ultimately a question of fact reserved for the trier of fact."  *Thirtyacre*, 36 F.3d at 700 (citation omitted).  In *Thirtyacre*, the trial court held "a full-blown evidentiary hearing" before finding that the defendant acted intentionally and without just cause.  *Id.*  At a trial on this complaint, where the burden on Plaintiffs will be lower, they may very well establish by a preponderance of the evidence that Defendant acted with the actual intent to cause injury to Plaintiffs, or that he knew injury to the Plaintiffs was highly likely to result from his actions, and that he did so in conscious disregard of his duties or without just cause or excuse.  At this stage of the

18

proceedings, however, Plaintiffs have not satisfied the burden of establishing that no genuine issue of material fact exists as to these § 523(a)(6) requirements.

### D. The court will not address Plaintiffs' request for attorneys' fees and punitive damages

In the Complaint, Plaintiffs requested an award of attorneys' fees as well as punitive damages. The purpose of this adversary proceeding, however, is to determine whether Plaintiffs' claim against Defendant is dischargeable or not. Even if Plaintiffs prevail at trial, any judgment in their favor would determine dischargeability only. The court will not liquidate Plaintiffs' claim, and therefore will not determine whether attorneys' fees will be awarded or whether punitive damages are warranted under state law.

Whether this court has subject matter jurisdiction to liquidate a nondischargeable claim and enter a final money judgment is not a settled question. *Compare In re Cambio*, 353 B.R. 30, 32–35 (B.A.P. 1st Cir. 2004) *with Cowen v. Kennedy* (*In re Kennedy*), 108 F.3d 1015, 1018 (9th Cir. 1997). In 1991, the Seventh Circuit determined that bankruptcy courts *may* enter a money judgment in dischargeability suits. *See Matter of Hallahan*, 936 F.2d 1496, 1508 (7th Cir.1991) ("allowing the bankruptcy judge to settle both the dischargeability of the debt and the amount of the money judgment accords with the rule generally followed by courts of equity that having jurisdiction of the parties to controversies brought before them, they will decide all matters in dispute and decree complete relief") (quotation omitted).

But, *Hallahan* does not *compel* entry of a money judgment by the bankruptcy court. Defendant's underlying bankruptcy case is a no asset chapter 7 case. The amount of any money judgment would have no effect on his bankruptcy estate or on a distribution to creditors. Therefore, "this court finds it more appropriate to refrain from entry of a money judgment and to restrict its final judgment in this proceeding to a finding of [dischargeability or]

19

nondischargeability." *Kelly v. Che* (*In re Young-Soo Che*), No. 11 A 929, 2013 WL 2109438, at *7 (Bankr. N.D. Ill. May 15, 2013). *See also In re Deitz*, 469 B.R. 11 (B.A.P. 9th Cir. 2012) (Markell, J., concurring), *aff'd*, 760 F.3d 1038 (9th Cir. 2014).

## IV.   CONCLUSION

In its consideration of the Motion for Summary Judgment on Count I, the court finds that there is no genuine issue of fact that Defendant made false representations and that Plaintiffs justifiably relied on those false representations.  Since Plaintiffs did not establish that there is no genuine issue of fact that Defendant knew his representations were false or acted with reckless disregard for the truth, or that he intended to deceive or defraud them, the court will deny Plaintiffs' request for summary judgment on Count I.

In its consideration of the Motion for Summary Judgment on Count II, the court finds that Plaintiffs did not establish that there is no genuine issue of fact that Defendant acted with the actual intent to cause injury to Plaintiffs, or that he knew injury to the Plaintiffs was highly likely to result from his actions, and that he did so in conscious disregard of his duties or without just cause or excuse.  Therefore, the court will deny Plaintiffs' request for summary judgment on Count II.

For all of the reasons stated above, the court will enter an order denying the Motion for Summary Judgment.  The order will set a status hearing on the Complaint, at which time the court may enter a pretrial order establishing a trial date and related deadlines in this proceeding.

Date:   January 17, 2025                          _____
                                                  DAVID D. CLEARY
                                                  United States Bankruptcy Judge

20